**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CASE NO.:

**DERRICK MCGOWAN**, individually and
on behalf of all others similarly situated,

                                                   **CLASS ACTION**

     *Plaintiff*,

               vs.

**FIRST ACCEPTANCE INSURANCE COMPANY, INC.,** a
Texas Corporation,

     *Defendant*.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Derrick McGowan ("Plainitff"), individually and on behalf of all others similarly

situated, files this Class Action Complaint against First Acceptance Insurance Company, Inc.,

("First Acceptance Insurance" or "Defendant"), and in support states:

## NATURE OF THE ACTION

1.     This is a class action lawsuit by Plaintiff, the named insured under an automobile

policy issued for private passenger auto physical damage (the "Insurance Policy"),[1] including

comprehensive and collision coverage, which requires payment of "Actual Cash Value" or

"ACV." The term "actual cash value" is defined in the Insurance Policy as "the market value at

the time of loss based upon the vehicle mileage, age, condition, original optional equipment, and

comparable vehicles available for sale within a reasonable geographic radius as documented in an

electronic database of publications and dealerships, less depreciation and/or betterment." *See*

_____

[1] Plaintiff's Insurance Policy is attached hereto as Exhibit A.

**Exhibit A**, at 3. The ACV of a vehicle equates to the full cost to replace the vehicle and such cost includes any mandatory regulatory taxes, costs and fees (Full Total Loss Payments or "FTLP") required to replace the vehicle.

2.      Defendant is a private passenger auto insurance carrier operating in Florida. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff but thousands of other putative class members ("Class Members") amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to pay full ACV payments to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include state and local title transfer, vehicle registration fees, and sales taxes (FTLP) in its calculation of ACV when paying full total loss payment to its insureds.

4.      Plaintiff brings a claim for declaratory relief and breach of contract based on Defendant's practice of failing to include taxes, title and tag transfer fees notwithstanding its contractual obligation to do so.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

6.     Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## THE PARTIES

7.     At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Sarasota County, FL

8.     At all times material hereto, Defendant is and was a corporation located in the State of Texas and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Sarasota County, Florida. Defendant's principal place of business and headquarters are both located in the State of Texas.

## FACTUAL ALLEGATIONS

9.     In the Insurance Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured.

10.     Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida during the relevant time period.

11.     Under the policy and applicable state law, ACV includes an obligation to pay state and local regulatory fees and taxes for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include sales tax, title transfer fees and tag transfer fees, each of which are mandatory fees imposed by the State of Florida.

12.     At all times material hereto, Plaintiff owned a 2015 Nissan Sentra, VIN # 3N1AB7AP3FY366779 (the "Insured Vehicle").

13.     At all times material hereto, the Insured Vehicle was insured under the Insurance Policy issued by Defendant.

14.     On or about June 17, 2017, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 0091704548-001 (the "Claim").

15.     Following the filing of the Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Insured Vehicle had a total valuation of $12,493.34. *See* **Exhibit B** (Market Valuation Report).

16.     Notably, CCC, in determining the ACV, included a line item for taxes. *See Id.* at 1.

17.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 1. Instead the Report noted that the Total Value of $12,493.34 may not reflect the settlement amount because items such as "license and fees" were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 1.

18.     Defendant then provided the total value amount as determined by CCC of $12,493.34, and subtracted the deductible of $500.00, ***and subtracted the applicable state and local taxes of $754.34***, for a final payment of $11,239.00 to Plaintiff. *See* **Exhibit C** (Total Loss Settlement Explanation).

19.     Defendant's payment of $11,239.00 did not include amounts for title transfer, tag transfer, or taxes (previously defined herein as FTLP) and was thus not an ACV in breach of its contract with Plaintiff, which promised to pay the full market value of the total loss of an insured's vehicle.

20.     Sales tax, title transfer fees and tag transfer fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

21.     Upon information and belief, Defendant, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

22.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.

23.     Florida law requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer a license plate or tag is no less than $4.50.

24.     Florida law requires that all vehicles are subject to a sales tax of approximately 6% of the base vehicle value. As detailed in the Market Valuation Report provided by Defendant, the sales tax due to Plaintiff is $754.34. *See* **Exhibit B.**

25.     Defendant breached its Insurance Policy with Plaintiff by failing to pay any amount for sales tax, title transfer fees, and tag transfer fees when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle.

26.     Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE POLICY

27.     Pursuant to the Insurance Policy, under the section entitled "Coverage for Damage to the Insured Auto" the Defendant "will pay for direct and accidental loss to the insured auto, including its factory-installed equipment, less any applicable deductible for each separate loss." *See* **Exhibit A** at 25.

28.     The "insured auto" includes the "auto described on the Declarations Page." *Id.* at 26.

29.     Under a provision entitled "Limits of Liability," Defendant states, in relevant part, that the "limit of liability for loss shall not exceed the lesser of:

1. The actual cash value of the stolen or damaged property, at the time of loss;
2. The amount you paid for the vehicle less your deductible;
3. The limit stated on the application if applicable;
4. the prevailing competitive price to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the loss…"

*Id.* at 30.

30.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

31.     ACV is defined as "the market value at the time of loss based upon the vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment." *Id*. at 3.

32.     Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or state and/or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all in order to receive payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state and regulatory sales tax and/or fees; or (5) any provision linking the amount of ACV state and regulatory sales tax and/or fees to a particular

replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

33.     According to Defendant's policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendant promises to pay a predictable amount – the actual cash value of the insured vehicle, including sales tax, tag and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

## PAYMENT OF SALES TAX AND MANDATORY FEES

34.     Sales tax, title transfer fees, and tag transfer fees are examples of elements constituting the FTLP owed to insureds in the event of a total-loss.

35.     By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.

36.     Nevertheless, Defendant declines to include all such fees  and costs in making ACV payment to total-loss insureds – specifically taxes, tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

37.     Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

38.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of

Plaintiff's policies.

39.     Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

40.     Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

41.     Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

42.     Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class.

43.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

44.     Class action is necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(a), because the prosecution of separate actions by or against individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

45.     Class treatment is also necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(b), because the prosecution of separate actions by or against individual Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

46.     Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

47.     Any argument that class treatment is not viable or productive in the present action is undercut by the fact that the Middle District very recently treated as a class action a case that is substantially identical in fact and in law to the present action. *See Bastian v. United Servs. Auto. Ass'n,* 150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). *Bastian* is in the process of being successfully settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of class treatment in the present action. Similarly, *Roth v. Geico General Insurance Co.*, Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018), is a substantially similar case recently certified as a class action with judgment entered in favor of the class.

48.     Plaintiff brings this action as class representative, individually and on behalf of all

other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Florida policy issued by First
> Acceptance Insurance with the same operative policy
> language covering a vehicle with private-passenger auto
> physical damage coverage for comprehensive or collision
> loss where such vehicle was declared a total loss, who made
> a first-party claim for total loss, and whose claim was
> adjusted as a total loss, within the five year time period prior
> to the date on which this lawsuit was filed until the date of
> any certification order.

49.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims

of the other members of the classes such that a class action provides a more efficient vehicle to resolve

this claim than through a myriad of separate lawsuits.

50.     Certification of the above classes is also supported by the following considerations:

> a.   The relatively small amount of damages that members of the
>      classes have suffered on an individual basis would not
>      justify the prosecution of separate lawsuits;
> b.   Counsel in this class action is not aware of any previously
>      filed litigation against Defendant in which any of the
>      members of the class are a party and which any question of
>      law or fact in the subject action can be adjudicated; and
> c.   No difficulties would be encountered in the management of
>      Plaintiff's claim on a class action basis, because the classes
>      are readily definable and the prosecution of this class action
>      would reduce the possibility of repetitious litigation.

51.     Although the precise number of class members is unknown to Plaintiff at this time and

can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one

of the largest motor vehicle insurers in the State of Florida and writes millions of dollars of private-

passenger physical damage coverage premiums, the classes of persons affected by Defendant's

unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so

numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a

standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy

language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

52.     Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

53.     Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

54.     Plaintiff's claims are maintainable on behalf of the Class Members pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

55.     The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

56.     Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

57.     Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

58.     Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

59.     Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages the Class in the future.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

60.     The previous paragraphs are hereby incorporated by reference.

61.     This count is brought by Plaintiff by individually and on behalf of the Class Members.

62.     Plaintiff was a party to a contract, the Insurance Policy, with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

63.     The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Florida law.

64.     Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

65.     Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

66.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

67.     Defendant refused to make a FTLP (including mandatory costs and fees) and thus failed to pay ACV owed under the Insurance Policy to Plaintiff and every Class Member.

68.     Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

69.     As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for the full ACV payment, including sales tax, title transfer fees, and tag transfer fees, as well as costs, prejudgment and post judgment interest, injunctive relief and other relief as is appropriate.

70.     In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

## COUNT II
## DECLARATORY RELIEF

71.     Paragraphs 1-59 are hereby incorporated by reference.

72.     This count seeks declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

73.     This count is brought by Plaintiff, individually, and on behalf of all Class Members.

74.     Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein.  *See* **Exhibit A**.  All Class members were parties to similar automobile insurance policies with Defendant that contained materially identical terms to Plaintiff's Insurance Policy.

75.     Plaintiff seeks a declaratory judgment that an insured is unconditionally entitled to FTLP in a total loss claim to pay a vehicle's ACV under the insurance policies that govern Plaintiff's and the Class members' contractual relationships with Defendant.

76.     Plaintiff contends Defendant is unconditionally required to pay sales tax, title transfer and tag transfer fees in a full total loss payment to pay a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members' relationship with Defendant.

77.     Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

78.     Because of Defendant's claim to the contrary, Plaintiff and the Class are in doubt as to their rights under the Insurance Policy.

79.     The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to unconditional entitlement to the sales tax, title transfer and tag transfer fees.

80.     The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of his right to the sales tax, title transfer and tag transfer fees.

81.     All antagonistic and adverse interests, namely Plaintiff, Defendant, and the Class when certified, are before this Court by the filing of this count.

82.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the Class are entitled to a declaration of its right to the sales tax, title transfer and tag transfer fees to resolve their doubt about their rights under the Insurance Policy considering the Defendant's position otherwise.

83.     Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will seek supplemental relief pursuant to 28 U.S.C. § 2202 in the form of an order directing that the sales tax and Vehicle Title and Registration Fees be paid to Plaintiff and the Class, an award of attorney's fees incurred in establishing coverage under the Insurance Policy, and pre-judgment interest and post-judgment interest, as the sales tax and Vehicle Title and Registration Fees represents liquidated amounts.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1.      For an Order certifying this action as a Class Action on behalf of the Class described above;

2.      For an award of compensatory damages for the Class in amounts owed by Defendant;

3.      For declaratory relief to be entered for Plaintiff and the Class that its interpretation of the Insurance Policy is correct, thereby requiring Defendant to unconditionally pay sales tax, title transfer and tag transfer fee;

4.      For all other damages according to proof;

5.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including § 627.428 Fla. Stat.;

6.      For costs of suit incurred herein;

7.      For pre- and post-judgment interests on any amounts awarded; and

8.      For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,

By:  */s/Andrew J. Shamis*
Andrew J. Shamis
Florida Bar # 101754
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Jordan D. Utanski, Esq.
Florida Bar. No. 119432
utanski@edelsberglaw.com
19495 Biscayne Blvd. #607
Aventura, FL 33180
Telephone:  (305) 975-3320