UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DERRICK MCGOWAN.,

        Plaintiff,

v.                                            Case No.  8:19-cv-1101-T-24CPT

FIRST ACCEPTANCE INSURANCE
COMPANY, INC.,

        Defendant.
_____/

**O R D E R**

**THIS CAUSE** comes before the Court on Defendant First Acceptance Insurance Company, Inc.'s Motion to Compel Appraisal and to Dismiss Class Action Complaint (Doc. 19) and Plaintiff Derrick McGowan's Response in Opposition (Doc. 23).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, First Acceptance Insurance Company, Inc. moves to compel an appraisal, pursuant to the provisions of a vehicle insurance policy, and to dismiss the Complaint. Having carefully considered the parties' submissions, the Court finds that the Defendant's Motion is due to be granted.

**I. BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

This action arises out of a motor vehicle accident where Plaintiff's vehicle was declared a total loss. Plaintiff owned a 2015 Nissan Sentra that was insured under a policy obtained through Defendant ("the Policy")[1]. (DE 1 at ¶¶ 1, 12, 13.) After the accident, Plaintiff filed a claim with Defendant. (*Id*. at ¶ 14). The Policy requires payment of the actual cash value ("ACV"), which Defendant determined was $11,739, and after subtracting the $500 deductible, Defendant

---

[1] A copy of the Policy is attached to the Complaint as Exhibit A. (*See* DE 1-1). The Court is able to consider the Policy in ruling on the instant Motion, because it is "central to the plaintiff's claim" and "the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Acceptance remitted $11,239.00 to Plaintiff. (*Id*. at ¶ 18; DE 1-3).

Plaintiff contends that Defendant underpaid his claim and breached the Policy by excluding from the ACV amounts for title transfer, tag transfer, and sales taxes. (DE 1 at ¶¶ 3, 4, 19, 25). Specifically, Plaintiff alleges Defendant failed to pay $754.34 in sales tax and failed to pay title and tag fees in an indeterminate amount approximating $80.00. *(See id*. at ¶¶ 18-19, 22-24). Plaintiff alleges that Defendant provided coverage and issued payment for total loss claims of Plaintiff and the unnamed class members, but improperly excluded sales tax and tag/title transfer fees from such payments. (*Id*. at ¶ 64, 65, 67). Plaintiff seeks to certify a class of similarly situated individuals who are insured by Defendant, and he asserts claims for breach of contract and declaratory relief on behalf of himself and the putative class. (*Id*. at ¶¶ 38, 41, 48, 61, 73). Plaintiff also seeks an award of attorneys' fees pursuant to section 627.428, Florida Statutes. (DE 1 at ¶ 70 & p. 15).

## II. THE POLICY

Defendant's payment obligations are governed by the Policy and Florida law. The Policy defines ACV as:

> market value at the time of the loss based upon vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment.

(DE 1-1 at p. 3). Part E of the Policy is entitled "Coverage for Damage to the Insured Auto" and contains the following relevant provisions:

> **INSURING AGREEMENT**
>
> If you pay a premium for this coverage, we will pay for direct and accidental loss to the insured auto, including its factory-installed equipment, less any applicable deductible for each separate loss.

* * * *

### LIMIT OF LIABILITY – PART E ONLY

Our limit of liability for loss shall not exceed the lesser of:

1. the actual cash value of the stolen or damaged property, at the time of loss.
2. the amount you paid for the vehicle less your deductible.
3. the limit stated on the application if applicable.
4. the prevailing competitive price to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with others of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the loss. Although you have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure form a competent and conveniently located repair facility. At your request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price.

* * * *

### APPRAISAL

*If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss.* Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. You will pay your appraiser's fees and expenses. We will pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

(DE 1-1 at pp. 25, 30 & 32 (emphasis added)).

Part E includes a section entitled "Payment of Loss", which states in pertinent part that "[p]ayment for loss is required only if you [the insured] have fully complied with the terms of this policy." (*Id.* at 31). The Policy also prohibits Plaintiff from filing suit absent full compliance with all Policy terms, including the appraisal requirement:

> **LEGAL ACTION AGAINST US**
>
> No legal action may be brought against us until:
>
> 1. there has been full compliance with all the terms of this policy.

*Id.* at 32.

### III. DISCUSSION

Plaintiff filed this action two years after First Acceptance paid his claim. On June 20, 2019, Defendant invoked its right to an appraisal by sending Plaintiff a letter, through his counsel of record in this case, notifying him that it was invoking its right to appraisal as mandated by the Policy. (Doc. Ex. A). Defendant argues that Plaintiff cannot proceed with this action until he has fully complied with all Policy terms, including the appraisal requirement. In response, Plaintiff urges that this cases concerns the single question of policy interpretation and coverage that is reserved for the Court, namely whether the Policy promises payment of the ACV of total loss vehicles including coverage for sales tax and transfer fees.

It is well-established Florida law, "the actual language used in a contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Gibney v. Pillifant*, 32 So. 3d 784, 785 (Fla. Dist. Ct. App. 2010). Here, the Policy states that if the parties "cannot agree . . . on the amount of a loss," either party has the right to demand an appraisal, and the appraisers "will determine the amount of loss . . . [which determination] will be binding." (DE 1-3 at 32). Plaintiff's allegations confirm that the parties disagree over the "amount of loss,"

which is based on Defendant's determination of ACV.  Plaintiff seeks to have sales tax and title transfer and license tag fees included in the "amount of loss" and Defendant does not agree.

Under Florida law, "[a]ppraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions which courts may enforce if there is an arbitrable issue." *United States Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. Dist. Ct. App. 1999).  Such "arbitrable" issues include questions "**of actual cash value and amount of loss**." *Id*. (emphasis added).  Equating appraisal clauses in insurance policies to arbitration provisions is rooted in an "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means . . . for which the parties have themselves contracted." *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. Dist. Ct. App. 1995) (citations omitted).  This "principle has particular applicability" in cases where "a great deal of judicial resources which might otherwise be required in resolving the factual and legal issues . . . would be saved at the threshold by a relatively swift and informal decision by the appraisers as to the amount of the loss." *Id*. at 1202.

Florida law recognizes that even though an appraisal clause includes the word "may," as is the case with the instant Policy, the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, "neither party has the right to deny that demand." *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. Dist. Ct. App. 1994) (interpreting appraisal clause identical to the one at issue here); *see also Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. Dist. Ct. App. 1994) (holding that trial court erred reversibly by denying motion to compel appraisal; noting that "appraisal provisions are deemed to be conditions precedent to recovery under the insurance policies."). Florida law is clear that "**when [an] insurer admits that there is a covered loss, any dispute on the amount of loss**

5

*suffered is appropriate for appraisal*." *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. Dist. Ct. App. 2014) (emphasis added) (reversing order denying motion to compel appraisal where coverage was not disputed and issue for appraisal concerned insurer's decision to exclude certain components from amounts payable for loss). Thus, where, as here, "coverage [is] admitted and the only remaining dispute is the amount of the loss … appraisal is appropriate." *Gonzalez v. Am. Sec. Ins. Co.*, 2015 WL 12852303, at **3-4 (M.D. Fla. Nov. 10, 2015) (granting motion to compel appraisal where only "dispute was the amount of covered loss").

Plaintiff does not, and cannot, allege that Defendant disputed coverage for Plaintiff's loss inasmuch as Plaintiff acknowledges that Defendant paid his claim. Instead, Plaintiff disputes the amount he was paid. Specifically, Plaintiff contends Defendant failed to pay sales tax of $754.34 and title transfer and license tag fees of at least $75.25 and $4.50, respectively. (DE 1 at ¶¶ 22-25). Because Plaintiff's allegations present no coverage issue and only raise questions regarding the amount of loss, the Court must agree with Defendant that appraisal is the appropriate (and contractually-mandated) mechanism for resolving this dispute.

In a similar putative class action, where insureds alleged their insurers improperly calculated ACV by excluding dealer overhead and profit from payments on automobile total loss claims, a district court recently granted the insurers' motion to compel appraisal upon a report and recommendation from the magistrate judge. *Bettor v. Esurance Prop. & Cas. Ins. Co.*, 2019 WL 2245564 (S.D. Fla. March 28, 2019). The relevant policy provisions concerning appraisal in *Bettor* are identical to those in Defendant's policy. In *Bettor*, the magistrate judge relied upon *Moore v. Travelers*, 321 F. App'x 911 (11th Cir. 2009), which affirmed an order compelling appraisal and dismissing a putative class action where the plaintiff alleged that an insurer

6

wrongfully withheld contractor costs from ACV payments in a homeowner's policy dispute. The Eleventh Circuit, in *Moore*, held that an identical appraisal provision required the insured "to first comply with the appraisal provision to determine his amount of loss;" because he had not done so, his "complaint fail[ed] to state a claim for which relief can be granted." *Id.* at 913. In *Bettor*, the plaintiff argued that the dispute was outside the appraisal provision because he was not challenging the amount of the deductions, but instead, was presenting a legal/coverage question of whether the deductions could be taken at all. *Bettor*, 2019 WL 2245564, at *2. The magistrate judge rejected this argument, concluding that the case "is undeniably about the actual cash value assigned to the vehicle . . . ***this litigation is not about coverage, but about the amount of money owed to [plaintiff] following an unsatisfactory claim adjustment***." *Id.*, at *3 (emphasis added).

As in *Bettor*, the instant litigation "is not about coverage," it is solely about the amount of money paid to Plaintiff. The Policy at hand expressly provides for either party to demand appraisal if the parties "cannot agree on the amount of a loss" and Defendant has demanded such an appraisal. The instant Motion, which was filed after Defendant invoked its right to appraisal, is Defendant's first substantive appearance in this case, and is not inconsistent with the right to appraisal.

The Policy expressly requires compliance with the appraisal process as a condition precedent to suing Defendant over a disputed loss amount. The Policy's "Legal Action Against Us" provision states that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this policy." (DE 1-3 at 36). And the Policy provides that Defendant is not required to make payment for any loss based on damage to the insured automobile unless the insured has fully complied with the Policy terms. (*Id*. at 35). Thus,

Plaintiff cannot maintain his individual claim nor can he purport to represent the interests of the unnamed class members absent compliance with the Policy terms requiring appraisal.

Plaintiff may argue that appraisal is inappropriate because he seeks declaratory relief in this lawsuit.  However, this argument is rejected for the reasons set forth in *Bettor*: it matters not whether the claim is styled as an action for declaratory relief or for breach of contract because "the claim seeks a re-valuation of the vehicle's value and are therefore subject to appraisal." *Bettor*, at *4 (citing *Johnson v. Nationwide Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002)). Like the Policy at issue here, the policy at issue in *Moore*, required the insured "to comply with the appraisal provision to determine his amount of loss before filing suit." 321 F. App'x at 912. The court granted the insurer's motion, concluding that the complaint failed to state a claim upon which relief can be granted because "no appraisal has taken place." *Id*. at 913.  The Eleventh Circuit affirmed, holding that the plaintiff was contractually bound to submit his claim to appraisal at which time "he may or may not establish that [the disputed contractor costs] be included in the "actual cash value" of his damages." *Id.* at 913.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant First Acceptance Insurance Company, Inc.'s Motion to Compel Appraisal and to Dismiss Class Action Complaint (Doc. 19) is **GRANTED**.  This case is dismissed without prejudice.  The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of August, 2019.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

**Copies to:**
Counsel of Record