**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DERRICK MCGOWAN, individually and
on behalf of all others similarly situated,

    Plaintiff,

    v.                                     Case No. 8:19-cv-01101

FIRST ACCEPTANCE INSURANCE         CLASS ACTION
COMPANY, INC., a Texas Corporation,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE**
**ORDER COMPELLING APPRAISAL OR, IN THE**
**ALTERNATIVE, TO DELINEATE THE SCOPE OF APPRAISAL**

Plaintiff Derrick McGowan ("Plaintiff") hereby files this Motion for Reconsideration of the Order Compelling Appraisal (Doc. 30, hereinafter "Order") or, in the Alternative, to Delineate the Scope of Appraisal based on new evidence produced in discovery by Defendant on July 24, 2019, after briefing on the topic concluded. The newly-produced documents confirm that the Parties' disagreement is a legal question for the Court and not a factual question subject to appraisal under Florida law or the Policy; in other words, the newly-produced documents confirm there is no disagreement over the amount of loss, and thus it would be clear error to compel appraisal. Because the Order was issued without the benefit of these documents, Plaintiff believes this Court deserves the opportunity to reconsider its Order with the benefit of a fuller picture of the facts.

## I.      INTRODUCTION

Plaintiff was involved in a car accident that rendered his vehicle a total loss under Defendant's Policy. Defendant determined the "amount of loss" for Plaintiff's vehicle, which it set forth in the Claim Summary. *See* Exh. A (Claim Summary). Plaintiff is now able to definitively stipulate to the amount of loss set forth by Defendant. Defendant's appraisal clause requires a disagreement about the amount of loss to be invoked, and no such disagreement exists here. The claim summary detailing Defendant's amount of loss was provided to Plaintiff on July 24, 2019, after the Parties briefed the Motion to Dismiss, and was not available to this Court. Respectfully, and perhaps because of Plaintiff's failure to properly explain his position absent the concrete example these new documents provide, this new fact demonstrates that the Order compelling appraisal appears to be based on a misconception about the Parties' disagreement. Plaintiff does not dispute the amount of loss and the Parties do not disagree that the amount of sales tax at issue is $754.34, both of which are set forth in Defendant's Claim Summary.

Moreover, Defendant also produced on July 24 – after briefing was concluded and thus not

available to the Court in deciding the Motion to Compel Appraisal – a document showing that Defendant requires proof of replacement before paying the $754.34. Exh. B. Thus, the newly-produced documents also crystallize what *is* disputed – the proper interpretation of the Policy. Defendant believes that Fla. Stat. § 626.9743 permits it to require insureds to first replace the vehicle before Defendant is required to pay sales tax. Plaintiff believes that failing to pay sales tax unless and until insureds prove replacement breaches the Policy. This straightforward question of Policy interpretation is an issue reserved for the court – in fact, it was the precise issue facing this Court (Judge Corrigan) in *Bastian*.

The answer, of course, depends on complex statutory interpretation, interpretation of the Policy, and Florida case law on the meaning and application of terms purporting to limit liability, such as actual cash value and market value, the intersection between statutory minimums and Policy language, and other issues of legal and contractual interpretation. Respectfully, it would be clearly erroneous to submit such issues to an appraiser. Because these documents were not previously available to the Court, Plaintiff believes this Court should have the opportunity to reconsider its Order given that these new documents confirm Plaintiff's position that the disagreement concerns interpretation of the Policy and Florida statutory law, neither of which are appraisable issues, which is the *sine qua non* in Florida for determining whether to compel appraisal. Thus, Plaintiff respectfully requests that the Court reconsider its Order and substitute an Order denying the Motion to Compel Appraisal or permitting Plaintiff to amend his Complaint to clarify the claim and clarify that he agrees with Defendant's determination of the amount of loss.

## II.  <u>LEGAL STANDARD</u>

A motion for reconsideration must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse

3

its prior decision." *Cover v. Wal-mart Stores, Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993). Generally, there are three justifications for reconsideration: (1) change in controlling law; (2) availability of new evidence; (3) the need to correct clear error or manifest injustice. *Florida College of Osteopathic Med. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998).

## III.   **ARGUMENT**

### A.  **Recap of Florida Law Concerning Appraisal**

The threshold question concerning appraisal in Florida is whether there is an appraisable issue. *Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12*, 54 So. 3d 578, 581 (Fla. 3d DCA 2011) ("Before arbitration (or appraisal) under an insurance policy such as the one at issue here may be compelled, a disagreement, or 'arbitrable issue,' must be demonstrated to exist."); *Fla. Ins. Guar. Ass'n v. Waters*, 157 So. 3d 437 (Fla. 2d DCA 2015) (because insurer was limited to payment for the actual cost of repairs, and because the actual amount paid is an objective and indisputable, there was no appraisable issue). Interpretation of a Policy or contract of insurance is not an appraisable issue. *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007) ("the interpretation of an insurance contract is a question of law for the court."); *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489 (Fla. 3d DCA 1996) ("questions of policy interpretation" are for a court, not an appraiser). The extent of damage to a property and the property's value (and the cost to repair or replace it) is an appraisable issue because it concerns the amount of loss itself. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021, 1025 (Fla. 2002). If the issue is appraisable and the policy provides for appraisal, an appraisal panel determines the amount of loss, but not entitlement to damages nor whether elements of the loss fall within the insuring clause of the Policy, nor whether they are excluded from the Policy. *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n*, 117 So. 3d 1226, 1227 n.1 (Fla. 3d DCA 2013), at 1330 ("Appraisal exists for a

limited purpose—the determination of 'the amount of loss.'".)

If the amount of loss is established – either because the Parties do not dispute the amount of loss or because it is established by an appraisal panel – questions of whether the Policy covers the loss are not appraisable. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d at 1025 ("[C]overage challenges are exclusively a judicial question," and not to be resolved through an appraisal provision.) Moreover, if the amount of loss has been established by an appraisal panel or is otherwise not disputed by the Parties, the question of Defendant's liability to its insured is not an appraisable issue. *State Farm Florida Ins. Co. v. Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015) ("The law in Florida is clear that issues of coverage and liability under an insurance policy are for the court or jury, respectively, whereas a dispute regarding the amount of loss found to be covered under the policy is subject to appraisal if so provided in the insurance policy.").

Thus, in Florida, the dispositive question concerns the nature of the disagreement. If the Parties disagree about how to interpret the Policy, whether there is coverage, or Defendant's liability for certain loss, appraisal is not appropriate. If the Parties disagree about the amount of loss sustained by the insured property, or the amount required to fix the damage, then appraisal is appropriate. Defendant set forth the "amount of loss" in Exhibit A. The only question relevant to appraisal, then, is whether Plaintiff disagrees with that determination, and, because he does not, there is no appraisable issue under Florida law.

## B. Defendant's Policy Requires Disagreement Over the Amount of Loss

Moreover, Defendant's Policy comports with well-established Florida law on the topic by requiring that the Parties disagree on the "amount of loss" prior to invocation of the appraisal process. Exh. C (Policy) at pg. 32 of 42 ("If we cannot agree with you on the amount of loss, then we or you may demand an appraisal of the loss."). Loss, in turn, is defined as "sudden, direct,

accidental damage or destruction." Policy at 4 of 42. The Policy confirms that other than determining the amount of loss – if there is a disagreement – through an appraisal process, neither party gives up any other rights. Policy at 32 of 42.[1] Thus, Defendant's Policy properly operates precisely as contemplated by Florida law – if the parties cannot agree on the amount of "sudden, direct, accidental damage or destruction", then, only in that case, an appraisal determines the amount of loss, after which the parties can litigate the amount that is covered or owed pursuant to the Policy.

### C.  Plaintiff Agrees With Defendant's Determination of the Amount of Loss

Here, however, Plaintiff agrees and stipulates to Defendant's determination of the amount of loss; thus, not only is there no appraisable issue under Florida law, Defendant's Policy does not provide for or permit appraisal. Defendant determined the amount of loss to be either $11,754.66 (if based on the cost of repairs) or $11,993.34 (if based on the total loss valuation). Exh. A (Claim Summary). Plaintiff does not dispute these amounts. The Policy states that "If we cannot agree with you on the amount of loss, then we or you may demand an appraisal of the loss." Policy at 32 of 42. Because there is no disagreement on the amount of loss, there is no justification for appraisal. Because Plaintiff agrees with Defendant's appraisal of the damage to his vehicle and of the underlying value of the vehicle prior to sustaining any damage, it would be error to send resolution of the interpretation of the Policy to appraisal. *Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12*, 54 So. 3d 578, 581 (Fla. 3d DCA 2011) ("Before arbitration (or appraisal) under an

---

[1] In this respect, Defendant's Policy is sensible and comports with Florida law, which holds that the appraisal process exists to establish the fundamental or underlying value of the loss at issue. *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n*, 117 So. 3d 1226, 1227 n.1 (Fla. 3d DCA 2013), at 1330 ("Appraisal exists for a limited purpose—the determination of 'the amount of loss.'".) If the Parties agree on that amount, of course, then there is no need for an appraiser to appraise the extent of damage or the cost necessary to fix the damage.

insurance policy such as the one at issue here may be compelled, a disagreement, or 'arbitrable issue,' must be demonstrated to exist.").

As part of its appraisal, Defendant noted that the sales tax amount is $754.34 – Defendant simply believes it does not owe that amount unless and until an insured proves replacement. Exh. B. Plaintiff agrees that $754.34 is the amount of sales tax at stake in this litigation, but believes the Policy requires payment of that amount regardless of replacement, and Defendant's failure to pay that amount constituted a breach of the contract. There is neither a basis nor reason to send a claim to appraisal where there is no disagreement as to any amount and where Defendant will simply decline to pay the disputed amount in any event. *See, e.g.*, *Lopez v. Progressive Select Ins. Co.*, 2019 U.S. Dist. LEXIS 43935, at *23 (S.D. Fla. Mar. 15, 2019) ("The Court questions what would be the effect of sending the issue to appraisal only to have Defendant later maintain that the policy does not provide for salvage and, accordingly, there is no dispute as to the amount of salvage value owed.") (citations omitted).

**D. Reconsideration Based on the Documents Unavailable to the Court at the Time of the Order Is Necessary to Avoid Clear Error and Manifest Injustice**

> a. The New Documents Demonstrate that the Disagreement Here Concerns Policy Interpretation and There Is No Appraisable Issue

Plaintiff is cognizant of the fact that reconsideration should be utilized in rare circumstances and should not be used as an excuse to simply continue an argument already decided. However, Plaintiff believes this Court deserves the benefit of the complete facts and a full picture of the dispute between the Parties. Exhibits A and B were produced as a part of Defendant's Initial Disclosures on July 25, and were not a part of the briefing this Court considered. Exhibit A sets forth Defendant's determination of the amount of loss, *a determination*

*with which Plaintiff agrees*.[2] Exhibit B establishes that Defendant believes it does not owe insureds

sales tax until and unless the insured proves replacement. Plaintiff believes such extra-contractual

requirement constitutes a breach of the contract.

This was the exact issue facing Judge Corrigan in *Bastian v. United Servs. Auto. Ass'n*, 137

F. Supp. 3d 1272 (M.D. Fla. 2015). Judge Corrigan's comprehensive opinion addressed contract

and statutory interpretation, extensive case law concerning insurance disputes and the interplay

between statutory minimum requirements and policy language, legislative history, and other legal

issues. Frankly, Judge Corrigan's opinion was not one that could have been given by an appraiser.

The parties here possess the same disagreement – if the Court agrees with Plaintiff's interpretation,

there is no further appraisal to be done; payment will be a ministerial application of the sales tax

rate and mandatory transfer fees imposed by the State of Florida (which could not be changed by

an appraiser).[3]

b.  Unlike *Bastian* and This Case, the *Bettor* Case Involves Appraisable Issues

There are cases, of course, in which the issue concerns the *valuation* of the vehicle (an

appraisable issue), rather than, as in *Bastian* and the present case, interpretation of whether the

---

[2] Because the cost to repair does not exceed the underlying value of the vehicle, the only figure that is missing is the salvage value – together with the amount of loss set forth in the cost to repair, the numbers exceed the ACV of the vehicle. The documents produced after briefing concluded also demonstrate that the salvage vehicle was sold for $2800 (and thus, together with the cost of repair, exceed the ACV – and thus the amount to which Defendant's liability for loss was limited – by approximately $2,000). Exh. I (Salvage Sale Receipt).

[3] The fact that no appraisal of the loss is necessary is also seen by the *Roth*, *Jones*, and *Sos* cases, which were substantively identical to this case. After the respective courts ruled in favor of the Plaintiff, the calculation of damages was ministerial and never required any examination or evaluation of the vehicle at all. The courts were able to prescribe the amount of damages down to the penny, because it was a ministerial calculation – 6% (plus local surtax) of the previously-determined (and unchallenged) underlying value of the vehicle and/or the state-imposed mandatory minimum amounts for transfer fees. Exh. F (Roth Order) at 11; Exh. G (Sos Order) at 13; Exh. H (Jones Order) at 8.

policy requires payment of sales tax and transfer fees irrespective of actual replacement (not an appraisable issue). This Court cited one of them in its Order. Order at 6-7. In those cases, the plaintiffs allege that when the insurers calculated the value of the vehicle, they did so incorrectly. The plaintiffs allege that certain deductions from the vehicle were unlawful and artificial. If the courts were to agree with the plaintiffs in those cases, then the vehicles would arguably need to be re-adjusted in a way that comports with the Policy and Florida law. *Bettor v. Esurance Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 54391, at *8 (S.D. Fla. Mar. 28, 2019) ("Bettor asks that the Court 'require Defendant to **readjust its claims** based on a proper methodology permitted under Florida law.'"). Thus, the court held that the issue of whether the *value* of the vehicle was properly determined was an appraisable issue.

Respectfully, it appears that part of the confusion here is a conflation between the claims asserted in cases such as *Bettor* with this case. A comparison of the Market Valuation Reports is useful to demonstrate the difference. The Market Valuation Report from the *Bettor* case (Case No. 0:18cv61860, Dkt. 6-2 (S.D. Fla.)) is attached as Exhibit D ("Bettor Report"), while Plaintiff's Market Valuation Report is attached as Exhibit E ("McGowan Report"). As both Reports show, CCC takes the listed sale price of comparable vehicles, and, after certain adjustments, determines the "base value" of the vehicle. Exh. D at 2 of 18; Exh. E at 1 of 18 (describing how "Base Vehicle Value" is calculated). Those adjustments include a "condition adjustment" (more on this later) to the comparable vehicle.[4] After those adjustments, whatever the "average" of the comparable

---

[4] The adjustments to the comparable vehicles also include, for instance, mileage. If a comparable vehicle is listed as $20,000 and has 15,000 miles, but the total-loss vehicle has 30,000 miles, the $20,000 is reduced pursuant to the "mileage reduction" because, all else being equal, a car with 30,000 miles is worth less than the same car with 15,000 miles. Because the "base value" of the total-loss vehicle is just the average of all the comparable vehicles, any adjustment to the comparable vehicle will impact the appraised "base value" of the total-loss vehicle.

vehicles is the "base value" of the total-loss vehicle. Next, CCC determines the "adjusted" vehicle value by comparing the actual physical condition of the total-loss vehicle compared with a vehicle of "average" condition. Exh. E at 1 of 18 (describing how "Adjusted Vehicle Value" is calculated).[5]

As hinted above, the first "condition adjustment" – applied to the comparable vehicles in determining the "base value" and prior to inspecting the actual condition of the total-loss vehicle – is the very thing that *Bettor* challenges. The "condition adjustment" signifies a reduction from the comparable vehicles, being sold at retail, to "Average Private" condition. Exh. E at 8 of 18.[6] In the *Bettor* case, the "condition adjustment" applied to the comparable vehicles was $945. Exh. D at 13 of 18. Incidentally – and not at issue at all in this litigation – the "condition adjustment" in Plaintiff's case was $712. Exh. E at 8 of 18. As the court explained, the "across-the-board deduction of $945 purportedly from each comparable vehicle" was the very thing the *Bettor* plaintiff challenged, allegedly because Fla. Stat. § 626.9743 requires payment of retail cost or for any deductions to be specific and itemized. *Bettor*, at *7-8; see Fla. Stat. § 626.9743(5)(a) and (c). Thus, "Bettor asks that the Court 'require Defendant to readjust its claims based on a proper methodology permitted under Florida law.' [DE 6, p. 17], presumably without the $945

---

[5] In other words, there are two "condition" adjustments (all other adjustments – mileage, for instance, or because a total-loss vehicle has leather seats but the comparable vehicle have cloth seats – are not "condition" adjustments). The first is applied to the comparable vehicles and purports to represent the difference between retail condition (the comparable vehicles) and private-party (or average) condition (the insured vehicle), and its effect is to lower the "base value". The second is applied to the actual total-loss vehicle at issue and is based on a comparison of the total-loss vehicle to a hypothetical vehicle of private-party (or average) condition, and its effect is to make the "adjusted" vehicle value either higher or lower than the base value.

[6] The theory appears to be that vehicles sold by car dealerships are in better condition than cars in the possession of private parties, such as insureds. Thus, CCC applies an automatic reduction meant to signify the difference between a vehicle in "retail" condition and the same vehicle in "private party" condition.

deduction." *Id*. at *8. In other words, Bettor alleged that the insurer incorrectly calculated the base value of his vehicle as $10,975 (Exh. D at 2 of 18); Bettor alleges the base value is $10,975 plus $945 – if base value is the average of all comparable vehicles, and all comparable vehicles were reduced by $945, then the base value was necessarily "reduced" by $945 – because any deductions for condition must be based on the *total-loss* vehicle (which would require the "re-adjustment" noted by the court). The ultimate point is that Bettor was challenging the insurer's determination of the value of the vehicle.

*That is simply not what is happening here*. As Exhibits A and B now clearly demonstrate, Plaintiff has no disagreement with Defendant's valuation of the vehicle or determination of the loss. Plaintiff does not seek a re-adjustment of the vehicle; Plaintiff merely seeks sales tax in the exact amount *Defendant already determined*.[7] Plaintiff is not challenging the "condition adjustment" of $712 and has no qualms or disagreements with the appraisal of the damage to the vehicle or the valuation of the vehicle prior to the loss.

Defendant calculated the base and adjusted vehicle value to be $11,739.00. Plaintiff does not disagree. Defendant calculated the applicable sales tax to be $754.34. Plaintiff does not disagree. Defendant calculated the costs of repair as $11,754.66. Exh. A. Plaintiff does not disagree. Plaintiff does not know the amount Defendant determined to be the salvage value of the vehicle, but Plaintiff stipulates that it was correct (presumably it was approximately $2800, the amount for which the salvage vehicle was eventually sold). Based on those numbers, Defendant determined the vehicle to be a total loss. Plaintiff does not disagree. The disagreement here is not

---

[7] This is seen in the fact that the Court placed great emphasis on the statement from *Bettor* that "this litigation is not about coverage, but about the amount of money owed to [plaintiff] following an unsatisfactory claim adjustment." Order at 7. As Exhibit A confirms, however, in this case Plaintiff is *perfectly satisfied with the claim adjustment*. Plaintiff thinks the Policy entitles him to the amount in sales tax determined by the claim adjustment.

over any of those things – as seen by the new documents produced after briefing concluded, the fundamental disagreement concerns whether Defendant is permitted to withhold the sales tax (*the amount of which is not disputed*) unless and until Plaintiff proves replacement. Defendant believes that it may do so (Exh. B). Plaintiff does not.  That is not an appraisable issue.[8] Respectfully, to send the issues cogently articulated by Judge Corrigan in the *Bastian* case for determination by an appraiser would be error. To the extent there was any confusion about whether Plaintiff disagreed with Defendant's determination of the amount of loss, the new documents affixed hereto as Exhibit A and Exhibit B present a more complete picture of the facts.[9] There is no disagreement.

### c.   Unlike This Case, *Moore* Concerned an Appraisable Issue of Fact

Finally, and respectfully, this Court's reliance on *Moore v. Travelers*, 321 F. App'x 911 (11th Cir. 2009) was misplaced, as seen by Exhibits A and B. In *Moore*, the court affirmed an Order sending a claim to appraisal by the lower court. *Moore v. Travelers Cos.*, 2008 U.S. Dist. LEXIS 130148 (N.D. Ga. Sep. 12, 2008). That case concerned whether the insurer should have included 20% in general contractor overhead and profit. *Id*. at *2. But there is a critical difference – the parties, in that case, "are in agreement that fees for general contractor overhead and profit should be included in the actual cash value estimate when the insured would be reasonably likely to need a general contractor." *Id*. at *9. Of course, some types of property damage are reasonably

---

[8] The Parties also disagree over whether Plaintiff is entitled to $79.85 in mandatory transfer fees. The amount of transfer fees is set by the State of Florida and is also not appraisable.

[9] Instructive here is *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489 (Fla. 3d DCA 1996), which reversed the lower court's Order compelling appraisal. In that case, the question concerned the "amount of loss" where the "loss" was "loss of use" – the insured claimed the Policy promised $200.00, while the insurer claimed the Policy only promised $10.00 for the seven days the insured rented a vehicle. The appellate court held the issue was one of policy interpretation and that there was no appraisable issue. *Id*. The insured, then, claimed she was owed under the policy $130.00 that the insurer claimed she was not owed. The fact that the parties disagreed did not mean there was an appraisable issue because the disagreement was whether the $130.00 was owed at all.

likely to need a general contractor – for example, extensive damage to an entire building. Some property damage is not reasonably likely to need a general contractor – for example, a thunderstorm that breaks a single window. The question was not whether the Policy should be interpreted to include a general contractor's overhead and profit because the Parties agreed that it did. The question was whether the damage at issue required a general contractor – was it more like destruction of an entire building or more like a broken window? That, of course, is an appraisable issue, and had nothing to do with contract interpretation.

Even if it wasn't subject to appraisal, whether damage is extensive enough to require a general contractor would almost always be a question for a jury (not a legal question for the court). *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 681 (whether general contractor overhead and profit is reasonably likely to be needed is a question of fact for a jury). It makes sense, then, that such questions of fact are appraisable. Questions of law, however, are not appraisable. *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007) ("the interpretation of an insurance contract is a question of law for the court."). Whether mandatory sales tax and transfer fees are "reasonably likely" to be incurred is not a question about which reasonable minds can differ – appraisers or jurors – which is why *Bastian*, *Roth*, *Sos*, and *Jones* were all amenable to resolution at summary judgment. *See also, e.g.*, *Nationwide Ins. Co. v. Cooperstock*, 472 So. 2d 547 (Fla. 4th DCA 1985) (the fact that interpretation of a legal question might turn on a question of fact does not merit appraisal if the key or overarching issue is a question of law); *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489 (Fla. 3d DCA 1996) ("questions of policy interpretation" are for a court, not an appraiser). The issue in *Moore* had nothing to do with contract interpretation – the matter would be fully resolved by determining whether the damage sustained was the type of damage that would require the use of a general contractor, and was thus a question requiring

resolution either by a jury or an appraiser. Here, however, the question is not whether the vehicle is the type of vehicle that would require payment of sales tax and transfer fees – sales tax and transfer fees are imposed on every vehicle transaction – but rather whether the Policy requires inclusion of such costs. It is a question of law inappropriate for an appraiser or jury. *See, e.g.*, *Clinard v. Allstate Floridian Indem. Co.*, 2007 U.S. Dist. LEXIS 99591, at *9 (M.D. Fla. Oct. 25, 2007) ("The amount of the permit fees is fixed by the county in which the repairs occurred [and] the issue appears to be whether or not the permit fees are covered under the policy . . . Thus, there is no need for an appraisal.").

Sales tax is mandatory – it is certain to be necessary to replace, to say nothing of "reasonably likely." The question is simply not whether sales tax (or transfer fees) are "reasonably likely" to be necessary; the question is whether they are owed pursuant to the Policy. In *Moore*, the question was the exact opposite – the Parties agreed that overhead and profit were owed under the Policy *if* they were reasonably likely to be incurred; the question was whether they were reasonably likely to be incurred.

Two additional points are worth noting here: *Moore* and other cases highlight an important difference between partial losses – often found in the context of homeowner litigation, like *Moore* – and total-losses, such as in the present case. It is more likely the case in partial losses that the "loss" and the "amount to be paid" is approximately the same because the loss or damage to the property is measured by the cost to repair the damaged property. For example, consider in Exhibit A, where the loss is set forth, including, of course, the cost of labor, component parts, paint, sales tax, etc. If that amount had been, say, $5,000 – if it had been a partial loss and not a total loss – the "loss" and the amount to be paid would be the same. The amount of "sudden, direct, accidental damage or destruction" to insured property (i.e., "Loss" as defined by the Policy) would also be

14

the amount owed.

Now consider an example where Defendant appraised the loss and determined that the labor, parts, paint, sales tax, etc. as set forth in Exhibit A was $15,000 – in that scenario, Defendant is not required to pay $15,000 because it limits its own liability for loss to "actual cash value." In the context of a total-loss, then, the amount of "sudden, direct, accidental damage or destruction" to insured property (the amount of "loss") and the amount Defendant is obligated to pay are not normally the same amounts – either because the amount of loss is higher than the insurer's limit of liability or because the amount of loss is lower (until it is combined with the salvage value) than the amount to be paid. It does not matter at that point what the amount of loss is – however high it might be, Defendant's liability for that loss is limited to "actual cash value."[10] In that scenario, the insureds oftentimes do not even know what the amount of loss is other than that it constituted a "total loss" – just as Plaintiff did not know the amount Defendant determined to be the amount of loss until production of Exhibit A.

Moreover, the fact that an insured disputes the amount he or she was paid on a claim does not mean the claim is subject to appraisal – necessarily so, given that *every* issue would be subject to appraisal, as cogently explained by a federal court:

> "Secura's argument to the contrary is unpersuasive. It contends that the "unambiguous language of the SECURA policy provides that the appraisal process is available when the parties fail to agree on the amount of the loss." Mot. Dismiss 14, ECF No. 12. Because the parties fail to agree on the amount owed, Secura argues, the dispute must be submitted to an appraiser. But anytime a Court interprets a contract—whether to determine if an exception applies, to resolve ambiguity in a word or clause, or to construe a legal definition articulating what is covered under the policy—the reading will

---

[10] The same is true where, as here, Defendant decides that the vehicle is a total-loss because the amount necessary to restore the loss *combined with the salvage value* exceeds its actual cash value limit of liability. Plaintiff does not know what Defendant determined to be the salvage value of the vehicle, but Plaintiff stipulates that it is correct and that he agrees with Defendant's determination.

> affect the amount owed. Under Secura's logic, the Court could not evaluate the contract to decide whether an applicable exception might apply, or whether the contract covered an event, as that would ultimately affect the amount recovered."

- *Klein v. Secura Ins. Co.*, 2014 U.S. Dist. LEXIS 200656, at *13-14 (Nov. 4, 2014) (holding that the question of whether the term ACV includes sales tax was for a court, not an appraiser, to decide, because "Secura and Klein's claims adjusters agreed on the pre-tax purchase price of replacement items. Compl. ¶ 15, ECF No. 1. The only issue is whether the contract phrase 'actual cash value' includes sales tax… In short, there is no dispute about the 'amount of loss'; there is only a question whether the contract phrase 'actual cash value' is calculated including sales tax.")

Thus, the mere fact that the amount alleged to be owed pursuant to a Policy is in dispute – as it is in all litigation between an insured and an insurer – does not mean the issue is subject to appraisal unless the amount alleged to be owed and the amount of loss *are the same amounts*.[11] But, as seen above, that is not always the case, and is almost certainly not the case in the context of a total-loss, given that the entire point of a total-loss is that it occurs whenever the amount of loss *exceeds the upper limits of an insurer's liability*. As set forth in the newly-produced Exhibits A and B, the disagreement here is not over the amount of loss, an amount Defendant set forth and to which Plaintiff is now able to (and does) definitively stipulate. Defendant cannot simply unilaterally insist the Parties disagree over the amount of loss.

> d.  <u>The Parties Cannot Be Compelled to Appraise Issues They Did Not Contractually Agree to Appraise</u>

---

[11] Of course, even if "loss" were interpreted to simply mean the equivalent of "whatever is owed under the Policy" – a definition that would inherently beg the question – a dispute thereof would not necessarily be appraisable. If the amount owed under the Policy turned on issues of law such as how the Policy is interpreted or the sales tax rate imposed as a matter of law, it would not be appraisable; if it turned on questions of fact such as the labor rates in the area, the going rate of a new headlight, or the value of chrome rims, it would be appraisable.

As set forth above, "loss" is defined by the Policy as "sudden, direct, accidental damage or destruction." Policy at 4 of 42. The Parties agreed that, if there was disagreement about the amount of "sudden, direct, accidental damage or destruction" to insured property – the amount of "loss" – either party could invoke appraisal of the "sudden, direct, accidental damage or destruction" to the property. Policy at 32 of 42. The Parties agreed that the appraisal process would be binding as to the amount of "sudden, direct, accidental damage or destruction" to insured property and reserved all other rights. *Id.*

Otherwise, the Parties cannot be required to appraise any other issues, nor would an appraisal process decide any other issues. *Vargas v. Schweitzer-Ramras*, 878 So. 2d 415, 417 (Fla. 3d DCA 2004). Plaintiff cannot be compelled to appraise the amount of "sudden, direct, accidental damage or destruction" to insured property unless he disagrees with Defendant's appraisal of the "sudden, direct, accidental damage or destruction" to insured property. *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489 (Fla. 3d DCA 1996).[12] Defendant cannot be obligated to pay the amount of "sudden, direct, accidental damage or destruction" to the property if it believes its Policy caps liability at an amount lower than the amount of amount of "sudden, direct, accidental damage or destruction" to the property. *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279 (Fla. 1988).

Plaintiff did not contractually agree to appraise the issue of whether the Policy should be interpreted to include payment of sales tax and mandatory transfer fees in the event of a total-loss. Florida law agrees that such issue is not appraisable. It would be error to compel Plaintiff to

---

[12] Notably, the Policy's appraisal clause says nothing about disagreements concerning "actual cash value," which is different than some other appraisal clauses, including that found in *Gimenez v. Am. Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 11191 (M.D. Fla. Feb. 3, 2009). In *Gimenez*, the appraisal clause applied where the parties "fail to agree on the actual cash value **or** amount of loss[.]" *Id.* at *2. In this case, however, Defendant's Policy permits appraisal only when the disagreement concerns the "amount of loss" and says nothing about ACV.

appraisal. Defendant cannot be compelled by an appraiser to pay sales tax and transfer fees if it believes its limit of liability precludes such payment. To the extent this Court's Order would allow an appraiser to decide that issue, it would be additional error. As can now be seen by Exhibit A, Defendant determined the amount of "sudden, direct, accidental damage or destruction" to the property and Plaintiff does not disagree with that determination. Because the Policy requires disagreement over the amount of "sudden, direct, accidental damage or destruction" to the property, appraisal would be inappropriate here.

e. <u>Summary</u>

To sum up, the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D. Fla. 2002). After briefing on Defendant's Motion concluded, Defendant produced Exhibits A, B, and I, which set forth Defendant's determination of amount of loss (and salvage value), and which demonstrate that Defendant withheld the sales tax (which was notably included in the amount of loss) pending proof of replacement. Thus, the evidence confirms that the disagreement here is not over the amount of loss, but is an issue of policy interpretation addressing whether Defendant is required to pay sales tax without precondition of replacement or is permitted to withhold sales tax until proof of replacement. It would therefore be clear error to compel appraisal of an issue of policy interpretation. *Atencio v. U.S. Sec. Ins. Co.*, 676 So. 2d 489 (Fla. 3d DCA 1996) (reversing lower court Order compelling appraisal of whether insured owed "loss of use" damages because the question was one of policy interpretation); *Bruno v. Travelers Ins. Co.*, 386 So. 2d 251 (Fla. 3d DCA 1980) (only a court can determine whether an insurer is obligated by contract or statute to pay an amount determined by an appraiser). Given that an appraiser cannot obligate Defendant to make payment for sales tax or transfer fees (particularly

given that the Policy reserves all rights other than a determination of the amount of loss (Policy at 32 of 42)), it would additionally be error to the extent this Court sends the issue of whether sales tax and transfer fees are owed under the Policy to an appraiser. *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279 (Fla. 1988).

Because the question here is a question of law, is not an appraisable issue, and the disagreement does not concern the amount of loss – as required by Florida law and explicitly by Defendant's Policy – it would be clear error to send this non-appraisable issue to appraisal. Particularly given that the evidence produced after briefing presents a clearer picture of the dispute and confirms Plaintiff's perspective, Plaintiff respectfully requests that this Court reconsider its previous Order and substitute an Order denying the Motion to Compel Appraisal. Alternatively, Plaintiff respectfully requests this Court reconsider its previous Order and substitute an Order permitting Plaintiff to amend his Complaint and clarify his allegations with the newly-produced documents demonstrating the disagreement is not over the amount of loss.

### E. In the Alternative, Plaintiff Requests this Court Delineate the Scope of Appraisal

If this Court is not inclined to reconsider its Order, Plaintiff respectfully requests this Court delineate the scope of appraisal. *Baldwin Realty Grp., Inc. v. Scottsdale Ins. Co.*, 2018 U.S. Dist. LEXIS 181709, at *17 (M.D. Fla. Sep. 6, 2018) (granting a request "that the Court direct the appraisers to prepare a line itemization of damages and delineation of scope in the appraisal award as there may be remaining coverage issues to be decided by the Court following appraisal."). Plaintiff requests this Court delineate that which the Court believes is in dispute and is subject to appraisal. Specifically, Plaintiff requests clarity on whether appraisal is required to: 1) determine the amount of "sudden, direct, accidental damage or destruction" (i.e., the definition of loss, Policy

at 4 of 42);[13] 2) appraise the value of the vehicle prior to the loss.[14] Because Plaintiff is unclear whether it is the "damage or destruction" to the vehicle or whether it is the vehicle *as if no "damage or destruction" occurred* that requires appraisal, Plaintiff respectfully requests, if this Court declines to reconsider its Order, to delineate the scope of the appraisal. To be clear, however, either way – whether it is the damage or the vehicle prior to damage – Plaintiff does not disagree with Defendant's determinations and believes the issues here are not appraisable issues.

## IV.   CONCLUSION

In sum, new documents produced after briefing on the Motion to Compel Appraisal conclusively demonstrate the amount of "loss" as determined by Defendant and it can now be confirmed that there is not a disagreement over such amount. By the express terms of the Policy, then, appraisal cannot be compelled. The new documents also show that Defendant included an amount for sales tax, but withheld it pending proof of replacement, thereby confirming that the issue in this litigation addresses a question of policy interpretation – is Defendant obligated to make payment absent proof of replacement? Florida law is clear that such question of policy interpretation is one reserved to the court, not an appraiser (or even a jury). Thus, the new documents clearly demonstrate that it would be error to compel appraisal in this case.

Plaintiff believes this Court deserves a full picture of the documents now available, and

---

[13] Defendants calculated this amount to be $11,754.66. Exh. A. Given the Policy language and definition of "loss," it appears this would be the amount requiring disagreement in order for appraisal to be invoked. There is no disagreement here.

[14] Because loss is defined as "sudden, direct, accidental damage or destruction," it does not seem that the value of the vehicle *prior to* the loss could be subject to the Policy's appraisal clause. Thus, even if the Parties disagreed about the value of the vehicle *prior to* the "sudden, direct, accidental damage or destruction," that would not be – in fact, it could not be – a disagreement about the amount of "sudden, accidental damage or destruction" to the vehicle. The value of the vehicle prior to the loss is necessarily acting as if the loss did not occur at all, not a calculation of how much loss occurred. In any event, it doesn't matter – Defendant calculated the underlying adjusted value as $11,739.00 and Plaintiff agrees with that amount.

respectfully submits this Court should reconsider its previous Order compelling appraisal and substitute a new Order denying the Motion to Compel, or a new Order permitting Plaintiff to amend his complaint to clarify his claim based on the new documents. Alternatively, because, particularly given the new document, Plaintiff frankly is unclear what is supposed to be appraised in any appraisal process, Plaintiff respectfully requests, should the Court decline to reconsider its previous Order, that the Court delineate the scope of appraisal.


Dated: August 21, 2019

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Ed Normand*
Edmund A. Normand
FBN: 0865590
*/s/ Jake Phillips*
Jacob Phillips
FBN: 0120130
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, Florida 32803
Tel:  (407) 603-6031
Fax: (888) 974-2175
ed@normandpllc.com
jacob.phillips@normandpllc.com
service@normandpllc.com

Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue
Suite 1205
Miami, FL 33132
Tel:  (305) 479-2299
Fax: (786) 623-0915
Email addresses:
efilings@shamisgentile.com
aelsayed@shamisgentile.com

</div>

Scott Edelsberg, Esq.
Jordan D. Utanski, Esq.
**EDELSBERG LAW, P.A.**
19495 Biscayne Blvd.,#607
Aventura, FL 33180
Tel:  (305) 975-3320
scott@edelsberglaw.com
utanski@edelsberglaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing is being served this day on all counsel of record, either via transmission of Notice of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

*/s/ Jake Phillips*
Jacob Phillips
FBN: 0120130

## SERVICE LIST

**SHUTTS & BOWEN LLP**
4301 W. Boy Scout Blvd., Suite 300
Tampa, FL 33607
Telephone: (813) 227-8123
Facsimile: (813) 227-8223
Frank A. Zacherl
Florida Bar No. 868094
fzacherl@shutts.com
Erik R. Matheney
Florida Bar No. 005411
ematheney@shutts.com
Alyssa L. Cory
Florida Bar No. 118150
acory@shutts.com

***Counsel for First Acceptance Insurance Company***